CASE 12.—ACTION BY MAUD HUDGINS AGAINST THE LOUISVILLE RAILWAY CO. FOR DAMAGES FOR PERSONAL INJURIES.—December 12.

# Louisville Railway Company v. Hudgins

Appeal from Jefferson Circuit Court, C. P. Branch (1st Div.).

EMMET FIELD, Judge.

Judgment for plaintiff. Defendant appeals. Affirmed.

1. Carriers—Injuries to Passenger Alighting from Car.—When a street car has been stopped at the usual place for discharging passengers, it is the duty of the operatives of an approaching car on a parallel track to have it under such control that it may be stopped at a moment's notice so that persons who have alighted may cross the track in safety.

2. Same—Contributory Negligence.—Though one who alighted from a street car and walked around behind the same to cross a parallel track failed to exercise ordinary care to avoid a car approaching on the other track from behind the car from which she alighted, whereby she was injured, the company was liable, if the operatives of the approaching car could, by ordinary care, have discovered her peril and prevented injury to her.

FAIRLEIGH, STRAUS & FAIRLEIGH, FOCHT & FIELD AND GREENE & VANWINKLE for Appellant.

## POINTS AND AUTHORITIES.

The second instruction given by the lower court is erroneous because the same qualified the Appellee's contributory negligence; (Louisville Railway Co., v. Colston, 79 S. W., 243, 25 Ky. Law Rep., 1933; Trauber v. Third Avenue Railway Co., 80 N.

Y., Supp. 231; Rider Admx., v. Syracuse Rapid Transit Railway Co., 58 L. R. A. 125, 171, N. Y., 139.)

CHESLEY H. SEARCY for Appellee

OPINION OF THE COURT BY JOHN D. CARROLL, COMMISSIONER—Affirming.

The appellee, a passenger on one of the appellant's cars going west, got off at Twenty-second street and Portland avenue, on the north side of the street, and after alighting, passed behind the car for the purpose of going to the south side. As she was crossing the south track a car on this track going east struck and seriously injured her. From a judgment and verdict in her favor, this appeal is prosecuted.

The negligence complained of as stated in the petition is that the east-bound car was running at a high and dangerous rate of speed, and, without warning to appellee, ran into and against her, and that her injuries were caused by the carelessness and negligence of appellant, its servants, and agents, in failing to give warning of the approach of the car to the crossing, and in operating and managing the car in a careless and negligent manner.

The chief, and in fact only, ground of complaint is alleged error of the court in the qualification of discovered peril added to instruction No. 2, which reads as follows: "It was the duty of the plaintiff when she started across the tracks of the defendant at the place mentioned in the petition to exercise ordinary care for her own safety, and, if you shall believe from the evidence that at that time she failed to exercise ordinary care for her own safety, and, by reason of such failure, she helped to cause or bring about the injury of which she complains and that she would not have been injured but for her failure in that respect,

if any there was, then the law is for the defendant, and you should so find, unless you shall believe from the evidence that the employes of the defendant on its east-bound car could have seen the plaintiff by the exercise of ordinary care when she came in peril from the car, and, by the exercise of ordinary care, could have prevented the injury which the plaintiff alleges she sustained; if they could, then the law is for the plaintiff, and you should so find.'' To understand the pertinency of the objection to this instruction it will be necessary to state the substance of the evidence. There are two street car tracks at Twenty-second street and Portland avenue. These tracks are 4 feet 6 inches apart, and, when the cars on each track are opposite to each other, there is a space of about two feet between them. The west-bound cars occupy the north track, and cars going east the south track. The car from which appellee alighted stopped at the usual place for the purpose of allowing her to alight. She got off of the rear platform on the north side of the car, and, as her home was on the south side of the street, she immediately turned and walked behind the car for the purpose of crossing the street, and, in doing so, stepped on the east-bound track. There is some conflict in the testimony as to whether she was struck by the east-bound car when she had crossed the first or the second rail, but when struck she was on the track, and there is evidence tending to establish that the east-bound car was running at a high rate of speed, that the gong or bell was not being sounded, that appellee was knocked about 20 feet, that the car ran 100 feet before being stopped, and that the motorman at the time appellee was struck was looking back at some ladies standing in a door on the side of the street, and that appellee did not see or hear the approaching car when she stepped on the

east-bound track. The evidence for appellant was to
the effect that the gong was being sounded, that the
car was under good control, and running at a low rate
of speed, and the motorman keeping a sharp lookout,
his testimony being that the west-bound car prevented
him from seeing the appellee until she stepped on the
track immediately in front of his car, and too late to
enable him to stop before striking her.

Some eye-witnesses to the injury testified that the
west-bound car had just started when appellee was
struck; others, that the car had gone about ten feet.
It was plainly the duty of the servants of appellant
in charge of the east-bound car to have it under per-
fect control, to sound the gong, and run at a slower
rate of speed when approaching the car that was
standing on an adjacent track for the purpose of
permitting passengers to alight. Where there is a
double track the street cars in use are usually so
constructed or arranged that passengers can only
alight from the side of the rear platform that is
farthest from the other track, and, if they desire to
cross the street, it is usual and customary to do so
immediately behind the car from which they have
alighted, as the cars stop to discharge passengers at
the street crossing, and, while going behind the car
for the purpose of crossing the street, their view of
a car approaching on the other track in an opposite
direction is obstructed, nor can the person in charge
of the car see them until they get from behind the car
from which they have alighted, and, when they do so,
they are necessarily either on or in dangerous prox-
imity to the track upon which the other car is ap-
proaching. When a car has been stopped at the usual
place for discharging passengers, it is the duty of those
in charge of an approaching car on the other track

to have it under such control that it may be stopped at a moment's notice, so that persons who have alighted may cross the track safely.  It is manifestly danger-ous, while passengers are alighting from a car, to permit another car, not under perfect control, to run by it on the adjacent track, as the motorman cannot discover the peril of the person attempting to cross the track in time to prevent injury, and it must be anticipated that persons who have alighted from a standing car at a street crossing may cross the street immediately behind it.  It is said that it is the duty of the passenger after alighting from a street car to stand in the street until the car has gone a sufficient distance to enable him to see an approaching car, and to allow persons in charge of the approaching car to discover them; in other words, that it is the duty of passengers to exercise ordinary care for his own safety.  That is true, but the passenger is not to be charged with negligence because he fails to anticipate that the company from whose car he has just alighted will place him in imminent peril from another car before he has had opportunity to reach a place of safety.  The duty that persons operating street cars owe to passengers does not end immediately when the pasenger has stepped safely to the ground.  They are required to, and should, exercise ordinary care to prevent injury by their cars to persons who have left the car while they are attempting to reach the street or a place of safety.  It was, of course, the duty of appellee, when she started to cross the tracks, to exercise ordinary care for her own safety, but, al-though she failed to do this and her failure may have contributed to such an extent to bring about the injury of which she complains, that it would not have happened except for her failure to exercise this de-gree of care, this will not relieve the appellant of

liability if the persons in charge of the car that struck her could, by the exercise of ordinary care, have discovered the peril appellee was in, and, by the exercise of ordinary care, have prevented the injury to her. It was the duty of the motorman in charge of the car at this point and place to keep a sharp lookout for persons alighting from the car, and who might be expected to cross the street immediately behind it, and to have his car under such control that he might stop it at a moment's warning, and it is manifest that, if the motorman had exercised this degree of care, he could and should have discovered the appellee's peril in time to have prevented injuring her. It was, therefore, entirely proper under the facts in this case to qualify the instruction as to contributory neglect, as was done.

The rule herein expressed as to the duty that street car companies owe to protect their passengers from being injured by cars on a track adjacent to the one from which they have alighted has been applied in substance and effect by the Supreme Court of Illinois in Chicago City Railway Company v. Mary A. Robinson (Ill.), 18 N. E. 772, 4 L. A. R. 126, 11 Am St. Rep. 87, where the court held that, "where street car tracks are in close proximity, to run a car or train of cars in one direction at a rate of speed and without signal or warning over a sidewalk crossing while a car or train bound in the opposite direction is discharging passengers at such crossing, and where, in this case, the view of the approaching train is obstructed by the standing cars from which the injured person has just alighted is surely conduct which fairly tends to prove culpable negligence, even though the rate of speed of such approaching train does not exceed that which is permitted by ordinances."

Perceiving no error in the record, the judgment is' affirmed.