## Creamer v. Louisville Ry. Co.

(Decided February 17, 1911.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

Street Railways—Injury to Pedestrian—Question of Negligence—Contributory Negligence of Appellant.—Appellant alleged that he was damaged by the negligence of the appellee, Louisville Railway company, in striking him with one of its cars in passing a car from which he had just alighted, by which he was greatly injured upon his head and other parts of his body. The jury upon hearing the evidence returned a verdict for the appellee on the ground of contributory negligence on the part of appellant. Held, it is sufficient to say that there was evidence from which the jury had the right to determine whether appellant's injuries were caused by the negligence of appellee's servants or by appellant's own negligence, and the instructions being correct and not objected to, the finding of the jury will not be disturbed.

EDWARDS, OGDEN & PEAK for appellant.

FAIRLEIGH, STRAUS & FAIRLEIGH and HOWARD B LEE for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Appellant, a resident of Sellersburg, Indiana, upon reaching the City of Louisville, took a Fourth street south bound car, operated by appellee, to go to a cooper shop on N. Street where he was employed. Upon reaching M. street the car stopped and appellant got off of it on the west side and and immediately went around the rear end of the car to cross Fourth street to the east

side; when in the act of stepping on the second railway track in that street he was struck by one of appellee's north bound cars, as it passed the one from which he had alighted, and greatly injured upon his head and other parts of the body.

Appellant sued appellee in the court below to recover damages for the injuries thus received, alleging that they were caused by the negligence of its servants in charge of the car with which he collided.

Appellee by answer denied the negligence complained of any pleaded contributory negligence on the part of appellant, but for which, it was alleged, he would not have been injured. The plea of contributory negligence was traversed by reply, thereby completing the issues.

The trial resulted in a verdict for appellee, and appellant, having been refused a new trial, has appealed.

But two grounds are urged for a reversal. 1st, That the verdict was contrary to and not supported by the evidence; 2nd, that the trial court did not properly instruct the jury. The first ground is without merit. While appellant and nearly all of his numerous witnesses testified that the car by which he was struck was running at a high rate of speed, that its gong or bell gave no warning of its approach, and that the force of the collision, by reason of the speed of the car, was sufficient to knock appellant ten or fifteen feet, the motorman and conductor on each of the cars, as did other witnesses introduced by appellee, testified that it signaled its coming by the sounding of the gong and that in approaching and passing the other car its speed was reduced to a rate not exceeding two miles per hour. Moreover, some of appellee's witnesses testified that appellant came so suddenly from behind the car in which he had been riding and onto the track immediately in front of the car which struck him that the motorman in charge thereof did not have time to stop it before it ran against him. Among these witnesses was the motorman, who further testified that he was maintaining a constant lookout in front of the car and that when appellant came from behind the other car and stepped on the track in front of the moving car it was in four feet of him and that he (the motorman) made every effort possible to stop the car before it struck him, but was unable to do so.

Appellant in testifying failed to state whether he saw the car before it struck him, but did say he did not remember that he looked to see if a car was coming.

H. C. May, a passenger on the car in which appellant had been riding, testified that he called to the latter as he was alighting from the car and warned him that a north bound car was approaching, but that he did not heed the warning.

It is apparent from the foregoing facts that it cannot fairly be claimed there was no evidence to support the verdict. Whether the verdict was against the weight of the evidence we are not required to determine. It is sufficient to say that there was evidence from which the jury had the right to determine whether appellant's injuries were caused by the negligence of appellee's servants or his own negligence, and their finding exonerating the former from responsibility will not be disturbed as it was not without support from the evidence or so contrary thereto as to have been unauthorized.

We are also unable to find any error in the instructions. In order that our appproval of them may be better understood, we insert them in the opinion:

"1. It was the duty of the motorman in charge of defendant's car being operated north on Fourth Street near "M." at the time plaintiff claims he was injured to keep a sharp lookout for persons alighting from the south bound car which he expected to cross the street immediately behind same, and to have the north bound car under such control as that it might be stopped at a moment's notice, and to give timely notice or warning of the approach of said car to said place by ringing of bell or gong, and if the jury believe from the evidence that the plaintiff alighted from south bound car at 4th and "M" streets on the 8th day of March, 1909, and went behind said car for the purpose of crossing the east track on which there was then being operated a car going north, was exercising ordinary care for his own safety, and further believe from the evidence that the motorman in charge of said north bound car failed to keep a sharp lookout at said time and place or failed to have said car under such control as that it might be stopped at a moment's notice, or failed to give timely warning of the approach of said car, to said place by ringing the bell or gong, and further believe from the evidence that by reason of the failure of the motorman in charge of said north bound car to observe any one or more of these duties, the plaintiff was struck by said north bound car, the law is for the plaintiff. and you should so find.

"2. It was the duty of the plaintiff when he started across the tracks of the defendant at the place in the evidence referred to to exercise ordinary care, for his own safety, and if you believe from the evidence that at the time he failed to exercise ordinary care for his own safety, and by reason of such failure helped to cause or bring about the injuries of which he complains, and that he would not have been injured but for his failure in this respect, if any there was, then the law is for the defendant and you should so find, although you may believe from the evidence that the motorman was negligent as submitted to you in the first instruction.

" '3. Ordinary care' is that degree of care which ordinarily carefully prudent persons usually exercise under like or similar circumstances. 'Negligence' is the failure to exercise ordinary care.

"4. If you find for the plaintiff you will award to him such sum in damages as you believe from the evidence will reasonably compensate him for the mental and physical suffering which he has endured or which it is reasonably certain he may endure as a result of his injuries, if any, and for the permanent impairment of his ability to labor and earn money, if any proven, not to exceed on that account the sum of $15,000.00, and for expenses in medical services, if any proven, not exceeding therefor, the sum of $500.00 your verdict in all not to exceed the sum of $15,500.00, the amount claimed in the petition; if you find for the defendant you will say so by your verdict and no more."

It will be observed that instruction 1 correctly advised the jury as to the care the law required of appellee's motorman on the north bound car in approaching and passing the south bound car from which appellant alighted before, receiving his injuries, not only in the matter of keeping a lookout and sounding the car gong, but also in slackening the speed of the car and otherwise so controlling its movements as to enable it to be stopped at a moment's notice; and further told the jury that if they believed from the evidence the motorman failed to perform any of these enumerated duties and that such failure caused appellant to be injured they should find for the latter. The jury could not have failed to understand from this instruction that if the performance of the duties required of the motorman would have enabled him to have discovered appellant's peril in time to have stopped the car before it struck

him, and his failure to perform them, or any of them, caused the car to strike and injure appellant, it was their duty to find for him.

The instruction applied to the facts of appellant's case the rule announced by this court in Louisville Railway Co. v. Hudgens, 124 Ky. 79. In that case, as in this, the plaintiff was struck and injured by a car passing a standing one from which she had alighted, and in going around the end of which in attempting to cross the street, she came in contact with the passing car. So, in that case the opinion laid down with precision the care with which, under such circumstances, those in charge of the moving car should approach and pass the standing car from which passengers had alighted or were alighting. We think the instruction in the case at bar substantially conformed to the opinion in Louisville Railway Co. v. Hudgens, supra.

The second instruction fairly stated the law with respect to contributory negligence and informed the jury what negligence on the part of appellant would defeat a recovery. We do not understand that this instruction as far as it goes, is objected to, but it is insisted for appellant that it should have been qualified by the addition of the following words:

"Unless you shall believe from the evidence that the employes of defendant on the north bound car could have seen plaintiff by the exercise of ordinary care when he came in peril from the car, and by the exercise of ordinary care could have prevented the injury which the plaintiff claims to have sustained, or unless you may believe from the evidence that the inability, if any, of the motorman to stop the car in time to avoid striking plaintiff, was due to the unusual or dangerous speed at which he was running it, if he was so running it, in which event the law is for the plaintiff."

The first half of the foregoing instruction offered as an addition to instruction 2, seems to have been in part taken from one approved in Louisville Railway Co. v. Hudgens, supra, and the last half from one directed to be given in Louisville Railway Co. v. Byers, 130 Ky. 437. In the Hudgens case there was evidence conducing to show that the car which struck the decedent was going at such a high rate of speed it knocked her 20 feet; that there was an opportunity for the motorman to see her and stop the car before the collision, but that instead

of keeping a lookout ahead he was looking back at some ladies standing in a door on the side of the street. These facts made the instruction proper in that case and differentiates it from the case at bar, in which there was no evidence tending to show that the motorman on the car which struck appellant saw, or by the use of ordinary care, could have seen him or discovered his peril in time to have stopped it before striking him. On the contrary, the proof both of appellant and appellee, was to the effect that the car was on appellant as soon as he stepped from behind the car from which he alighted, and his evidence was directed toward showing that the negligence of the motorman consisted in running the car at too great a rate of speed and failing to give warning by the sounding of the gong of the approach of the car.

The facts in Louisville Railway Co. v. Byers, supra, from the opinion of which, as previously stated, the last half of the offered addition to instruction 2 was taken, were unlike those of this case. In that case the car which was an "extra" was being rushed at a speed of 20 or 25 miles an hour to a remote part of Louisville to accommodate the Sunday travel to a park. It ran over and killed the decedent as he was attempting to cross from one side of the street to the other. He was in plain view of the motorman and the car in his view, for the distance of a block before it struck him and the gong sounded as the car approached. Though he was a large man, weighing 220 pounds, the car ran at such speed that it knocked his body 40 feet and ran 75 feet beyond the point of collision before it was stopped. The vital question in the case was whether the speed of the car was what prevented it from being stopped after the decedent got on the track and before it struck him. On the facts of that case the court held that the instruction, from which appellant obtained the latter half of the one he offered as an addition to No. 2 in this case, should have been given in addition to those used on the trial in that case. We do not think it, or the first half taken from the opinion in the Hudgens case, applicable here, but if it could be so held, it is in substance expressed in instruction 1.

We do not understand that instructions 3 and 4, the one defining negligence and ordinary care and the other the measure of damages, are objected to; at any rate we find them correct and that the instructions as a whole

fairly gave for the guidance of the jury all the law of the case.

. Wherefore the judgment is affirmed.