No. 23,369.

GLADYS LANDIS, *Appellee*, v. THE WICHITA RAILROAD & LIGHT
COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Personal Injuries—Manner of Selecting Physicians to Examine Plaintiff.* It is held that no abuse of discretion is shown in the refusal of the trial court to select physicians to examine a plaintiff the extent of whose injuries was in issue, the plaintiff being willing to be examined by physicians chosen by the defendant.

2. SAME—*Foot Catching in Rope Hanging on Rear of Car—Purpose of Rope Immaterial.* To warrant a recovery in an action for injury to one who just after alighting from a street car was thrown down by reason of her foot being caught in a rope hanging from the rear of the car it is not essential to prove the character or purpose of the rope.

3. SAME—*Evidence of Defendant's Negligence Question of Fact for Jury.* Evidence that after a woman had alighted from a street car and while she was crossing the track behind it in order to reach the sidewalk in that direction, her foot was caught in a loop of a trailing rope and as the car started she was thrown down and dragged some distance, justifies submitting to a jury the question whether the injuries received were due to the negligence of the company, and this whether or not she was to be regarded as a passenger at the time of the accident.

Appeal from Sedgwick district court, division No. 1; RICHARD E. BIRD, judge. Opinion filed January 7, 1922. Affirmed.

*Kos Harris,* and *V. Harris,* both of Wichita, for the appellant.
*S. B. Amidon, S. A. Buckland, H. W. Hart,* and *Glenn Porter,* all of Wichita, for the appellee.

The opinion of the court was delivered by

MASON, J.: Gladys Landis obtained a judgment against the Wichita street car company on account of injuries which, according to her story, were received in this manner: On alighting from a street car she undertook to walk across the track just back of the car for the purpose of reaching the sidewalk on the side of the street opposite to that on which she had left the car. Her foot was caught in a loose rope hanging from the rear platform and as the car started up she was thrown to the ground and dragged for some distance. The company appeals.

1. Just before the impaneling of the jury the defendant's attorneys asked the court to appoint two or three physicians of its own choosing to examine the plaintiff. The plaintiff being willing to be examined by two doctors chosen by the defendant, the court refused to make any selection on its own account, and the defendant com-

plains of this refusal, arguing that the report of an examination would have carried more weight with the jury if made by persons selected by the court. Merely to illustrate the difference of opinion on the subject, and without approving the doctrine, it may be mentioned that a statute requiring the court to select expert medical witnesses to testify in murder cases has been held unconstitutional, in part at least because of the very fact that the jury would be likely to give exceptional credence to their testimony, the court saying:

"The expert witnesses provided for by this section testify under a sanction which gives to their testimony practically the same weight as if it were delivered by the court itself, and if that testimony, being against the accused, were either willfully false or ignorantly mistaken, its baneful results would be appalling. To give to the testimony of a witness or witnesses this extraordinary certificate of candor, ability, and truthfulness, while the other testimony in the case must be judged by the jury by ordinary standards, is to subvert the very foundations of justice." (*People v. Dickerson*, 164 Mich. 148, 154.)

This court has held that in some circumstances the trial court has discretionary power to appoint physicians to make an examination of a person whose condition is in controversy (*Ottawa v. Gilliland*, 63 Kan. 165, 65 Pac. 252), but if a refusal to do so can ever amount to an abuse of discretion, we find no basis for holding such to have been the case here.

2. The contention is made that the plaintiff in her testimony did not identify the instrument of the accident. She testified that she thought she stepped right in the loop of a rope, because it tightened around her ankle when the car started; that she did not know which rope it was, but it was on the car—a rope hanging down from the car. It was not necessary for the plaintiff to prove that it was the trolley rope, or what its purpose was. A showing that the cause of the accident was a rope hanging from the car was a sufficient identification.

3. The defendant claims that at the time of the injury the plaintiff had ceased to be a passenger. The rule that one who has alighted from a railroad train may for some time retain his character as a passenger because on premises under the exclusive control of the carrier does not apply to street car service inasmuch as the company does not have exclusive control of the street (4 R. C. L. 1047.) It would be quite consistent with that distinction, however, to hold that one who alights from a street car is entitled to the same protection as a passenger so far as concerns any risk due to a situation

created and controlled by the company, and there are decisions to that effect.   (4 R. C. L. 1048, note 2; *Louisville Railway Co. v. Kennedy,* 162 Ky. 560; *Willingham v. Birmingham R. Etc. Co.,* 203 Ala. 351.)   The defendant cites a case in which the contrary rule was conceded (*Gargan v. West End Street Railway,* 176 Mass. 106), but there it was held that the defendant was guilty of no negligence.   It is unnecessary to determine whether the plaintiff was still a passenger at the time of the injury, because if she is entitled to recover at all she can recover without invoking other rights than those of a pedestrian.   The defendant asserts that the court applied the doctrine of *res ipsa loquitur,* and that this was error.   The jury were instructed in effect that it was the duty of the defendant to maintain the trolley rope in such manner as not to endanger persons passing back of the car while exercising ordinary prudence; that if this was not done and the dangerous condition was known to the conductor the fact would constitute negligence; that if the rope was dragging behind the car and the conductor knew it or should have known it, and knew or should have known that persons passing in the rear might become entangled in the rope, it was his duty to see that the plaintiff was not entangled in the rope and would not be, before he started the car, the neglect of which duty would constitute negligence.   We do not think these instructions invoke the doctrine of *res ipsa loquitur,* but whether they do or not we hold that as applied to the facts of the case they fairly submit the issue of negligence to the jury and involve no prejudicial error.   The defendant relies upon the Massachusetts case already cited and upon *Whilt v. Public Service Corporation of New Jersey,* 74 N. J. L. 141, holding as a matter of law in situations somewhat similar to that here presented that a street car company is not negligent in allowing the rear fender to be down, contrary to custom.   Whether or not we should follow these cases if they were directly in point, we think there is sufficient difference between a rear fender and a dragging rope to justify a distinction.

The judgment is affirmed.